## SKOWHEGAN WATER COMPANY

*vs.*

## SKOWHEGAN VILLAGE CORPORATION.

Somerset.    Opinion December 18, 1906.

*Contracts.    Substantial Performance.    Equitable Relief.    Actions.    Recoupment.
Damages.    Burden of Proof.    Water Contracts.*

By the strict rules of the common law in cases where services have been rendered or materials furnished in an honest endeavor to perform a contract, but are found to be at variance with the requirements of its express terms, and yet in some degree beneficial to the party to whom the services have been rendered or for whom the materials have been furnished, full performance was undoubtedly required as a condition precedent to the right of recovery. But in most jurisdictions the rigor of this common law rule has been relaxed, even in courts of law, especially in building contracts and other like agreements, where the defendant is practically forced to accept the result of the work and relief is granted to the plaintiff by applying the equitable doctrine of substantial performance.

Although a plaintiff cannot recover upon a contract from which he has departed, yet he may recover upon the common counts for the reasonable value of the benefit which upon the whole the defendant has derived from what the plaintiff has done. If a plaintiff endeavors in good faith to

perform, and does substantially perform an agreement he is entitled to recover the fair value of his services having regard to and not exceeding the contract price after deducting the damages sustained by the defendant on account of the breach of the stipulations in the contract.

In some of the decided cases, reference is made to the "deduction" "recoupment" or "set off" of the defendant's damages for the obvious purpose of indicating a convenient process or method of ascertaining what the services rendered by the plaintiff were reasonably worth, and not with the intention of casting upon the defendant the burden of proving the value of a plaintiff's services. It is incumbent upon the plaintiff in such cases to prove the value of the work done or materials furnished by him. The question of recoupment, properly so termed is not involved. But if the plaintiff's breach of contract be such as to subject the defendant to consequential damage, such damage may be the foundation for a legitimate claim in recoupment and the burden of proving such damage would be upon the defendant.

Whether a given stipulation is to be deemed a condition precedent, a condition subsequent or an independent agreement is purely a question of intent. And the intention must be determined by considering not only the words of the particular clause, but also the language of the whole contract as well as the nature of the act required and the subject matter to which it relates.

In view of the pecularities which necessarily characterize the sale and delivery of water through a system of water pipes under a contract where a water company has agreed to furnish, for a term of years, through its hydrants, to a municipal corporation, a constant and ample supply of potable water, under sufficient pressure for the extinguishment of fires, unavoidable accidents excepted, *it is* manifest that the mere receipt and consumption of water under such contract would not conclusively show an acceptance of the service as a performance of the contract. Considerable time might be required to determine whether or not an imperfect service was caused by the "unavoidable accidents" excepted in the contract, and under such circumstances a due regard for the necessities of the people would render a discontinuance of the use of the water unreasonable and impracticable.

In the case at bar, the plaintiff took exceptions to certain instructions given by the presiding Justice and which are stated in the opinion. *Held:* that these instructions as a whole as applied to the facts in this case were substantially correct and not prejudicial to the plaintiff.

On exceptions by plaintiff. Overruled.

Assumpsit to recover $1037.50 being the semi-annual installment of $1000 alleged to be due the plaintiff under paragraph eight, and $37.50 for six months use of five additional hydrants under paragraph five, of a written contract between the parties.

Tried at the March term, 1906, of the Supreme Judicial Court, Somerset County. Verdict for plaintiff for $519.64. The plaintiff requested the presiding Justice to give a certain instruction to the jury which request was refused and thereupon the plaintiff took exceptions. The plaintiff also took exceptions to certain instructions given by the presiding Justice. The case appears in the opinion.

Memorandum: One of the Justices sitting at the term of the Law Court at which this case was argued did not sit in this case, being disqualified under the statute by reason of having ruled therein at nisi prius.

*Gould & Lawrence,* for plaintiff.

*Walton & Walton,* for defendant.

SITTING: WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. This is an action of assumpsit to recover $1037.50, being the semi-annual installment of $1000 alleged to be due the plaintiff under paragraph eight, and $37.50 for six months use of five additional hydrants under paragraph five of the written contract between the parties.

The declaration in the writ contains two counts, one setting out the contract and alleging performance on the part of the plaintiff and a breach on the part of the defendant, and the other on an account annexed specifying the two items of $1000 and $37.50 above mentioned, and making reference to the contract.

The first and eighth paragraphs of this contract are as follows: "First—The said Company hereby agrees to maintain within the limits of said Corporation, and for the use of said Corporation, for fire purposes, seventy-five hydrants, as now located, or as hereafter re-located by said Corporation, under the provisions of section four of this indenture, and to keep and maintain said hydrants in good repair at all times during said term of twenty years. And during said term said Company agrees to furnish at all times, through said hydrants, and through all additional hydrants which may hereafter be put in under the provisions of section five of this indenture, a constant and ample supply of potable water, under sufficient

pressure for the extinguishment of fires, unavoidable accidents excepted."

"Eighth—And in consideration of the above promises and agreements of said Company, the said Corporation hereby agrees to pay to said Company, for the use of the water for the purposes aforesaid, and in the manner and on the conditions aforesaid, the sum of Two Thousand Dollars ($2000) per annum for the said period of Twenty years, said sum to be paid in equal semi-annual payments as follows, viz: One Thousand Dollars ($1000) on the first day of July, and One Thousand Dollars ($1000) on the first day of January of each and every year during said period of twenty years. The first payment under this agreement to become due and payable on the first day of January, A. D. 1890, and the amount then due to be estimated pro rata from said nineteenth day of August, A. D. 1889, to said first day of January, 1890, and thereafter as above."

The plaintiff introduced evidence tending to show a compliance on its part, in general, with the covenants and conditions of the contract, proved non-payment of the sums sued for, and rested.

The defendant introduced evidence tending to show that during the six months prior to July 1, 1905, the water furnished by the plaintiff through its pipes and hydrants for the use of the defendant was not under sufficient pressure for the extinguishment of fires several of which occurred during that period ; also that it was not potable. The plaintiff in rebuttal offered evidence tending to show that the pressure was sufficient at all times, except when unavoidable accident prevented, and that the water was potable.

There was no evidence of any damage to the defendant corporation from any breach of contract on the part of the plaintiff, except as may be inferred from the foregoing.

It was insisted by the plaintiff's counsel at the trial that evidence tending to show insufficiency of water pressure and impurity of the water was important only as a basis for recouping damages, and that such damages only could be recouped as might have been suffered by the defendant as a corporation.

The defendant's counsel, on the other hand, claimed that it was not limited to proof of damages in set-off, but that it was incumbent

upon the plaintiff to satisfy the jury that during the six months prior to July 1, 1905, it had furnished the defendant a constant and ample supply of potable water, under sufficient pressure for the extinguishment of fires; that unless it had so done, it could recover only such a sum as the service was reasonably worth to the corporation.

Among other requests the plaintiff asked that the following instruction be given to the jury:

"It is not a condition precedent to recovery that the plaintiff should have furnished a constant and ample supply of potable water under sufficient pressure for the extinguishment of fires, but insufficiency of pressure can be taken advantage of by the defendant for the purpose of recouping in damages."

The presiding Justice declined to give this instruction and upon this branch of the case instructed the jury inter alia as follows:

" Has the plaintiff performed its contract in this particular, during that term? If it has, and if it has supplied potable water, under sufficient pressure, then it is entitled to its contract price. If it has not, then we come to another and very important question. The defendant does not seek, in this case, to recover damages of the plaintiff. The defendant does not seek to have its damages sustained by it through the plaintiff's breach of contract set off, or recouped, as we sometimes say, against the plaintiff's claim. If it did, in order to establish any defense at all it would be necessary to show that the defendant corporation itself had been damaged — had property injured — by reason of the loss of pressure. The losses which individuals in the corporation — that is, the citizens — individuals in the town — may have sustained, are not to be considered. They are not parties to this suit. This is merely a suit between these two parties, both corporations, upon this contract, and in order to have any damages allowed or recouped, it would be necessary to show that the corporation, as a corporation, has been injured in its property by the want of pressure which the contract called for. But this is not the defendant's position. The position between these two parties is simply this: The plaintiff sues for the price of an agreed service, and says that it has kept its agreement, and has furnished the service called for. The defendant says it has not furnished the service, and

therefore is not entitled to the pay.  The question of damages does not come in at all.  It is merely a question whether the plaintiff has so far performed its service as to be entitled to its pay.  And if it had not performed its service, it is not entitled to its pay, at least in full.  .  .  .  .

" The general rule is that where a man has agreed to do a service for another, to a certain extent, or in a particular way, and fails to do that service to the extent he agreed to, or does it in a different way, then the plaintiff, with whom he contracts may do one of two things.  He may refuse to accept the service, and say ' Here, this isn't what I ordered, —this isn't what I agreed to pay for, and I won't take it,' or he may take it and say 'This isn't what I agreed to pay for,' but impliedly, by taking it he agrees to pay what the service is worth.  So, to use an illustration somewhat like that used by counsel, supposing a carpenter agrees to build your house upon your land, or to repair it, and agrees to do it in a particular way, but he doesn't do it right — he leaves some rooms unfinished for instance, or puts in different material — cheaper material than he agreed to put in, or does it in some way that is contrary to the contract.  The house is upon your land, and you can't very well tear that house down or refuse to accept it.  Practically the man is obliged to accept it, not absolutely obliged to, but practically, and he may take it; but he may say ' I shall not pay you the full contract price, because you have not done what you agreed to do.'  In such a case as that, if he takes the work and accepts and uses it — not accepts it as an equivalent of the contract, but accepts it as his own for use, the party performing the work is not debarred from all compensation because he has failed to keep his contract, but he can only recover what the services are reasonably worth.

"Now I apply that same rule in this case.  If the plaintiff agreed to perform the agreed service, either as to quality of water or as to sufficiency of pressure, and the service was accepted, as it practically had to be — not absolutely, because the corporation might have terminated the contract if they saw fit — that is, if they had a reason for doing it — but if they allowed it to go on and the water stood here for their use, so they could use it, and did use it, the plaintiff

would not be debarred entirely from recovering merely because the contract had not been fully kept, but would be entitled to recover what the services actually rendered were reasonably worth.

" There are a great many things, especially in a public service like a water service that enter into the value of that service. It is not merely the number of houses that may burn, or may not burn. That isn't it. But here is a village which the municipal corporation has a right to protect, and was trying to protect by its contract. On the other hand, here was the company which necessarily had to lay out large sums of money in order to be able to furnish the service. That was its investment. The value of the service to the purchaser of course does not depend upon the cost of it, the amount of the investment, however, but upon the situation, the length of the pipes, as far as we know anything about them, the size of the village, so far as we know anything about it — all have some bearing as showing what that service which was actually rendered should have been worth. The contract was for $1,037.50 for every six months. That isn't controlling. It may be considered by you. There may have been elements of profit in the contract. It may have been advantageous to the plaintiff, or it may have been advantageous to the defendant. And whatever advantages they would get out of their contract, of course they are entitled to. The plaintiff here is entitled not to its contract price, or to any advantage which it might have by its contract, but is entitled to the reasonable worth of the service to the purchaser.

"So far as the potable water problem is concerned, as bearing upon the question, the rule applies to that feature also.

"In estimating the value of the service to the corporation, as I have already said, you are not to estimate how much less value the service was to the individual water takers, by reason of the water not being drinkable, if that was the case. You are simply to answer, how much less the service was worth to the corporation for corporation purposes, by reason of any impurity in the water, and not because it was not worth so much to individuals. It is merely and purely a contract between the two corporations, and I cannot too

often, perhaps, or too emphatically, say that the loss to individuals — the embarrassment to individuals is not to be weighed."

Verdict was for plaintiff in sum of $519.64, and the case comes to this court on exceptions to the refusal of the presiding Justice to give the requested instruction and to the instructions actually given to the jury.

It is contended in argument in behalf of the plaintiff that the exceptions should be sustained for the following reasons:

1. Because the contract is not properly apportionable, and performance of six months service is not to be held a condition precedent to recovery of a semi-annual installment.

2. Because, if the first contention be overruled, the condition precedent loses its character as such by acceptance of the service and retention of the benefits.

3. Because breach of one portion of a severable contract can be taken advantage of only by recouping in damages.

4. Because the rule of damages was uncertain and incorrect.

It is the opinion of the court, however, that upon the facts disclosed by the record in this case, these contentions in behalf of the plaintiff cannot be sustained. The rulings and instructions of the presiding Judge in regard to the plaintiff's right to recover in case of partial performance were sufficiently favorable to the plaintiff and substantially in accord with the equitable doctrine that has heretofore prevailed in this State in analogous cases. The decisions in other states undoubtedly disclose many different forms of expressions if not a variety of opinions, in relation to the proper rule to be applied in adjusting the rights of parties where services have been rendered or materials furnished in an honest endeavor to perform a contract, but are found to be at variance with the requirements of its express terms, and yet in some degree beneficial to the other party. By the strict rules of the common law in such a case, full performance was undoubtedly required as a condition precedent to the right of recovery, but in most jurisdictions the rigor of this common law rule has been relaxed, even in courts of law, especially in building contracts and other like agreements, where the defendant is practically forced to accept the result of the work and relief

is granted to the plaintiff by applying the equitable doctrine of substantial performance.

Thus in the early case in this State of *Norris* v. *School District*, 12 Maine, 296, the court say "It may now be considered as the settled law that where one party has entered into a special contract to perform work for another and furnish materials and the work is done and the materials furnished, but not in the manner stipulated in the contract, yet if the work and materials are of any value and benefit to the other party, he is answerable to the amount whereby he is benefited, citing *Hayward* v. *Leonard*, 7 Pick. 181.

In accordance with this view, the rule in this class of cases was subsequently stated by Mr. Greenleaf as follows:

"Here though the plaintiff cannot recover upon the contract from which he has departed, yet he may recover upon the common counts for the reasonable value of the benefit which upon the whole the defendant has derived from what he has done." 2 Green. Ev. sect. 108. If he endeavored in good faith to perform, and did substantially perform the agreement he was entitled to recover for his services the contract price after deducting so much as they were worth less, on account of such imperfect performance of the contract." *Hattin* v. *Chase*, 88 Maine, 237, and cases cited. He is entitled to recover the fair value of his services having regard to and not exceeding the contract price after deducting the damages sustained by the defendant on account of the breach of the stipulation in the contract. *Blood* v. *Wilson*, 141 Mass. 25; *Powell* v. *Howard*, 109 Mass. 192; *Veazie* v. *Bangor*, 51 Maine, 509.

In some of these and other similar cases, reference is made to the "deduction" "recoupment" or "set off" of the defendant's damages for the obvious purpose of indicating a convenient process or method of ascertaining what the services rendered by the plaintiff were reasonably worth, and not with the intention of casting upon the defendant the burden of proving the value of the plaintiff's services. It is incumbent upon the plaintiff in such cases to prove the value of the work done or materials furnished by him. The question of recoupment, properly so termed, is not involved. But if the plaintiff's breach of the contract be such as to subject the defendant to consequential

damage, that may be the foundation for a legitimate claim in recoupment, with respect to which the burden of proof would be upon the defendant.  *Gillis* v. *Cobe*, 177 Mass. 584.

But in the case at bar the plaintiff contends that the contract is not properly apportionable, and that performance of six months service should not be held a condition precedent to recovery of the semi-annual installment of $1000, which the defendant agreed to pay for the service specified.

Whether a given stipulation is to be deemed a condition precedent, a condition subsequent or an independent agreement is purely a question of intent. " And the intention must be determined by considering not only the words of the particular clause, but also the language of the whole contract as well as the nature of the act required and the subject matter to which it relates." *Bucksport &* *B. R. R. Co.* v. *Brewer,* 67 Maine, 295, and cases cited.

When the contract in question is examined in the light of these practical considerations, it cannot be doubted that the stipulation for the supply of potable water and the hydrant service specified in paragraph one of the contract was intended and understood by the parties as a condition precedent and that it was to be strictly performed each six months before the defendant could be held liable to pay the $1000 installment.

In *Winfield Water Co.* v. *Winfield,* 51 Kansas, 184, a case strikingly analogous to that at bar, the court say: " Where suit is brought, as in this case, to recover hydrant rentals for six months, if it be shown that the plaintiff has failed to substantially comply with its contract, the burden rests on the plaintiff to show the value of the service, actually performed by it for the city, and the defendant would be entitled to show any damages sustained by it by reason of the plaintiff's failure.  The plaintiff could not recover more than the value of the services rendered to the city over and above all damages occasioned by plaintiff's failure.  It may be that there would be great practical difficulty in showing the actual value to the city of the water furnished; if so, it is not the fault of the city, but of the plaintiff.  The rights of the parties are defined by the contract, and the party which violates the contract, and fails to

comply with its provisions, must suffer rather than the innocent one." Inasmuch as the defendant corporation made the contract in question for the benefit of the inhabitants of the village, and suffered but slight injury in its corporate capacity, it would be a manifest injustice to compel the defendant to rely upon its claim for damages by way of recoupment and assume the burden of proving the reasonable value of the plaintiff's services. See also *Sykes* v. *St. Cloud*, 60 Minn. 442.

Again it is contended that the stipulation must in any event lose its character as a condition precedent by reason of the acceptance of the service and continued use of the water. But in view of the peculiarities which necessarily characterize the sale and delivery of water through a system of water works, it is manifest that the mere receipt and consumption of water under such a contract would not conclusively show an acceptance of the service as a performance of its contract. Considerable time might be required to determine whether or not the imperfect service was caused by the "unavoidable accidents" excepted in the contract, and under such circumstances a due regard for the necessities of the people would render a discontinuance of the use of the water unreasonable and impracticable.

Finally the plaintiff complains that the rule of damages given "allowed the jury to disregard the contract altogether and afforded no tangible basis for fixing the value of the services rendered." Upon this point, as has been noted, the final instruction was as follows:

"The contract was for $1,037.50 for every six months. That isn't controlling. It may be considered by you. There may have been elements of profit in the contract. It may have been advantageous to the plaintiff, or it may have been advantageous to the defendant. And whatever advantages they would get out of their contract, of course they are entitled to. The plaintiff here is entitled not to its contract price, or to any advantage which it might have by its contract, but is entitled to the reasonable worth of the service to the purchaser.

"So far as the potable water problem is concerned, as bearing upon the question, the rule applies to that feature also. You are

simply to answer, how much less the service was worth to the corporation for corporation purposes, by reason of any impurity in the water.

This, considered in connection with other parts of the charge, gave the jury to understand that in adopting a measure of value for the assessment of damages, the parties were to be considered as entitled to any advantages they would have derived from the contract as far as the element of profit was concerned; but in case of partial performance, the plaintiff was not entitled to the contract price, nor to any advantage from the contract in the maintenance of the suit; but it was entitled to recover the fair value of the service, having regard to the contract price, and "considering how much less the service was worth to the corporation" by reason of the plaintiff's breach of the contract.

It is the opinion of the court that the instructions as a whole as applied to the facts in this case, were substantially correct, and not prejudicial to the plaintiff.

*Exceptions overruled.*