USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2287 MYRIAM E. LABORDE-GARCIA, Plaintiff, Appellee, v. PUERTO RICO TELEPHONE CO., ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Jacqueline D. Novas with whom Jose J. Santiago, Jose L. _____________________ __________________ _______ Verdiales and Fiddler, Gonzalez & Rodriguez were on brief for _________ _______________________________ appellants. Guillermo Ramos Luina with whom Harry Anduze Montano was on _____________________ _____________________ brief for appellee. ____________________ May 18, 1993 ____________________ BREYER, Chief Judge. Myriam Laborde-Garcia claims ___________ that Puerto Rico's Telephone Company, and several of its officials, deprived her of her government job without providing her with the procedural protections that the Federal Constitution requires. Cleveland Bd. of Educ. v. ________________________ Loudermill, 470 U.S. 532 (1985). The district court entered __________ an injunction ordering the Company to reinstate her, and it denied the individual defendants' claims of "qualified immunity." The defendants appeal these orders. 28 U.S.C. 1291; Mitchell v. Forsyth, 472 U.S. 511 (1985). We affirm. ________ _______ I Background __________ Ms. Laborde is a career employee of the Commonwealth-owned Telephone Company, where she has worked since 1975. On July 7, 1986, she was injured in a work- related auto accident. She received treatment at the State Insurance Fund. One year later, on July 6, 1987, she returned to work. Fourteen months after that, on September 7, 1988, Ms. Laborde went back to the Fund for treatment. In early October (the following month) the Company wrote to Ms. Laborde to tell her that it was dismissing her because of absences related to her "prolonged illness." -2- 2 Ms. Laborde, almost immediately thereafter, told Company officials that they had made a mistake. Her latest treatment at the Fund (in September) was not related to a "prolonged illness." Rather, she said, the treatment (and her absence from work) resulted from a new work-related accident, involving moving boxes. That accident had occurred in August 1988, only two months before her current treatment. This "mistake" seemed important, for Puerto Rico's workers' compensation law requires an employer to "reserve" the job of an injured employee undergoing treatment at the Fund, and to "reinstate" the employee in that job, but only if, inter alia, at the time the worker seeks reinstatement, __________ no more than "twelve months" have "lapse[d] . . . from the _____________ date of the accident." P.R. Laws Ann., tit. 11, 7. (See Appendix for complete text of statutory provision). More than "twelve months" had "lapse[d]" from Ms. Laborde's first accident; but only two months had "lapse[d]" from the time of the second. The Company, either because it did not believe Ms. Laborde, or because it thought her factual claim made no difference, neither changed its mind about dismissal nor granted Ms. Laborde a hearing at which she could dispute the -3- 3 basis for her dismissal. Ms. Laborde subsequently brought this lawsuit. She claimed that the Company, in effect, by depriving her of her job without any kind of prior hearing, violated the Fourteenth Amendment's Due Process Clause. The district court held that Ms. Laborde was correct. We agree. II The Law _______ Like the district court, we find the law clear and in Ms. Laborde's favor. The Fourteenth Amendment says that the Commonwealth may not deprive a person of "property without due process of law." The Supreme Court has made clear that "property" includes the job of a government employee who (under local law) cannot be dismissed except for "good cause." Loudermill, 470 U.S. at 538-39; see also __________ ___ ____ Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 262 (1st ________________ ____________ Cir. 1987), cert. denied, 486 U.S. 1044 (1988). The Supreme ____________ Court has also made clear that the process "due" such an employee normally includes "'some kind of hearing' prior to . . . discharge." Loudermill, 470 U.S. at 542. The parties __________ here agree that the Puerto Rico Telephone Company is a government employer, Kauffman v. Puerto Rico Tel. Co., 841 ________ _____________________ F.2d 1169, 1173 (1st Cir. 1987), and that it can dismiss Ms. -4- 4 Laborde, a permanent employee, only for cause. P.R. Laws Ann., tit. 3, 1336(4). The Company, through its officials, has told Ms. Laborde that she cannot return to work. They did not, and have not yet, provided her with any significant opportunity for a hearing. Hence, they have deprived her of "property" without the "process" that the Federal Constitution requires. Loudermill, 470 U.S at 546. __________ The defendants make three arguments to the contrary. First, they say that, under Puerto Rico's law, Ms. Laborde lost her job when she did not appear at work; the workmen's compensation statute provides only a right to "reinstatement" (after an absence caused by a job-related injury). The Federal Constitution, they add, does not protect rights to "reinstatement" because such 'rights' are only expectations of employment, which may or may not be fulfilled. See Board of Regents v. Roth, 408 U.S. 564, 576 ___ ________________ ____ (1972) (due process clause "is a safeguard of the security of interests that person has already acquired in specific benefits"); cf. Kauffman, 841 F.2d at 1173 (where employee ___ ________ is illegally hired, property right in employment is never created). As a matter of Commonwealth law, however, this argument seems wrong, for the statute itself does not -5- 5 separate "discharge" from "reinstatement;" rather, it speaks both of "reserv[ing]" the job of an employee under treatment and "reinstat[ing]" that employee (under specified conditions) on request. See P.R. Laws Ann., tit. 11, 7; ___ Carron-Lamoutte v. Tourism Co. of Puerto Rico, 92 J.T.S 97 _______________ ___________________________ (1992); In Re Hotel Da Vinci, Inc., 797 F.2d 33, 35 (1st ____________________________ Cir. 1986), citing Rojas v. Mendez & Co., 84 J.T.S. 3 (1984) ______ _____ ____________ (employer cannot validly discharge employee missing work due to medical treatment during twelve-month period following disability); but see Union Tronquistas de Puerto Rico, Local _______ _______________________________________ 901 v. Emery Air Freight Corp., 596 F.Supp. 829, 833 (D.P.R. ___ _______________________ 1984) (referring to separate steps of "discharge" and "reinstatement"). Regardless, as a matter of federal law, the argument is wrong because the workmen's compensation statute so narrows the government's discretion to refuse to reinstate Ms. Laborde (during the relevant twelve months) that it provides her with a "legitimate claim of entitlement" to that continued employment. That is to say, local law's narrowing of the employer's discretion to decide not to reinstate means that Ms. Laborde could reasonably have believed, and relied upon her belief, that local law would likely permit her to remain employed. Based on this -6- 6 reasonable expectation created by local law, Ms. Laborde had a federally protected "property" interest in continued employment. See Roth, 408 U.S. at 577 (to "have a property ___ ____ interest in a benefit," a person must "have a legitimate claim of entitlement to it"); id. at 578 (implying existence __ of "property" in renewal of employment if employer's discretion to choose not to renew had been narrowed); Bishop ______ v. Wood, 426 U.S. 341, 344-45 (1976); cf. Kentucky Dept. of ____ ___ _________________ Corrections v. Thompson, 490 U.S. 454, 463-65 (1989) ___________ ________ (liberty interest created if prison inmate could reasonably expect that visit would be allowed absent occurrence of listed conditions). Thus, whether one views the Company's actions as taking away Ms. Laborde's present job, as refusing to reinstate her, or (realistically) as doing both at the same time, the Company deprived Ms. Laborde of the sort of "property" that the Constitution protects. Second, the defendants argue that they need not have given Ms. Laborde any further hearing because a hearing could not have helped her. Cf. Carey v. Piphus, 435 U.S. ___ _____ ______ 247, 266-67 (1978) (recovery limited to nominal damages in cases where employer refuses hearing but dismissal still clearly justified). They point to a recent Commonwealth Supreme Court case, Santiago v. Kodak, 92 J.T.S. 11 (1992), ________ _____ -7- 7 which held that the Workmen's Compensation Act does not protect a person who concededly did not report the relevant accident until after the employer dismissed him. They claim _____ that, like the plaintiff in Santiago, Ms. Laborde did not ________ report her accident until after her dismissal. Santiago, however, does not obviate the need for a ________ hearing in this case. Unlike the plaintiff in Santiago, Ms. ________ Laborde does not concede that she did not report the accident until after she was dismissed. Instead, Ms. Laborde says that she reported her second accident when she sought treatment at the Fund on September 7, 1988, before ______ her employer dismissed her. She adds that the Fund initially mixed up its paperwork, but later amended that paperwork to reflect the occurrence of her second accident. These facts, if proven, might well bring her case outside the scope of Santiago's holding. Santiago, by emphasizing ________ ________ the need to determine the facts, does not avoid, but, rather, reinforces the need for a hearing. Third, the individual defendants say they are entitled to "qualified immunity," because, at the time of the relevant events, their federal legal obligations were unclear. See Anderson v. Creighton, 483 U.S. 635, 638-41 ___ ________ _________ (1987) (state actors have qualified immunity unless -8- 8 precedent would have alerted reasonable person that action would infringe "clearly established" constitutional principle); Harlow v. Fitzgerald, 457 U.S. 800 (1981). They ______ __________ correctly point out that the Supreme Court of Puerto Rico did not decide until 1992 (after the events here in issue) that Commonwealth employees have a right to a pre- termination hearing where accident-related, time-limit issues are in dispute. Carron-Lamoutte, 92 J.T.S 97. _______________ Carron-Lamoutte, however, simply applied pre-existing _______________ federal constitutional requirements. In 1985, Loudermill __________ made clear that permanent government employees possessed the federal right to a pre-discharge hearing. In 1987, in Kauffman, this circuit applied Loudermill to Puerto Rico's ________ __________ Telephone Company, making clear that the company must give its career employees pre-discharge hearings (unless illegal hiring meant they had never become career employees in the first place). See Kauffman, 841 F.2d at 1173. Thus, in ___ ________ 1988, the basic law governing Ms. Laborde's claims was clear and in her favor. We concede that defendants, in an effort to show that Ms. Laborde did not possess constitutionally-protected property, have succeeded in creating an argument (based on their interpretation of the workmen's compensation statute) -9- 9 that is complicated, counterintuitive, and ultimately wrong. We also concede that one who understood that argument, but had not yet worked out the proper legal response, might doubt whether or not the Constitution protected Ms. Laborde. Yet, we do not believe that the potential existence of an unusual, sophisticated, and ultimately wrong legal argument, is sufficient, legally speaking, to muddy what, for immunity purposes, would otherwise amount to clear legal waters. Were that not so, given the ingenuity of the bar, "qualified immunity" would become absolute in that it would become available in virtually any case argued by a creative lawyer. We conclude that the Company's legal obligation to provide Ms. Laborde with an appropriate hearing before depriving her of her job was clear in 1988. And, the district court's denial of the defendants' claims of qualified immunity was legally correct. The Telephone Company itself makes one further argument. It says that it is a special kind of government entity, namely a "municipal corporation." It points out that a "municipal corporation" cannot be ordered to pay a Section 1983 damage award based on the actions of its officials unless those actions are alleged to have been taken pursuant to an official policy or custom of the -10- 10 corporation. See Monell v. Dep't of Soc. Servs. of the City ___ ______ ________________________________ of New York, 436 U.S. 658, 690-91 (1978). It contends that ___________ the court's order directing it to reinstate Ms. Laborde with ____ back pay constitutes a "damage award." And, it claims that _________ Ms. Laborde's complaint is deficient in that it fails to allege the existence of an official policy, pattern, or practice which would justify this damage award, as Monell ______ requires. Assuming much in defendant's favor for the sake of argument, we find a short, conclusive answer to this claim in the fact that the complaint does properly allege that the Company itself (whether or not a municipal corporation) is responsible for the violation of the Constitution. It claims that all of the individual defendants "were duly appointed officials and/or employees of [the Company];" that each of the individual defendants was "charged with the administration" of the Company's employment regulations; and that each of the individual defendants acted, at all times, "within the scope of their employment as agents and/or employees of [the Company]." These allegations amount to an assertion that the actions of the individual defendants represented Company policy, for which the Company is responsible. We do not read the complaint's conclusory -11- 11 statement that plaintiff's "dismissal" violated "applicable laws . . . and . . . regulations" as alleging the contrary. Moreover, the record before us contains considerable evidence that the employees' actions represent official Company policy; and it contains no evidence to the contrary. See Monell, 436 U.S. at 690 ("Local governing bodies . . . ___ ______ can be sued directly under 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes [an official] policy statement . . . or decision . . . .") Finally, we note that the district court has not yet calculated back pay or other damages. We realize that the way in which Puerto Rico law applies to the facts as eventually determined (whether or not it permits dismissal on such facts) may affect such calculations. See, e.g., ___ ____ Carey v. Piphus, 435 U.S. at 260 & n. 15 ; Hernandez-Del _____ ______ _____________ Valle v. Santa-Aponte, 575 F.2d 321, 324 (1st Cir. 1978); _____ ____________ Brewer v. Chauvin, 938 F.2d 860, 862 & n.2, 864 & n.4 (8th ______ _______ Cir. 1991); City of Chicago v. Dep't of Labor, 737 F.2d ________________ _______________ 1466, 1471-73 (7th Cir. 1984). We express no opinion as to the proper outcome of the question of Puerto Rico law nor can we do so before the facts are finally determined. We here hold only that federal law clearly required the Company -12- 12 to provide Ms. Laborde with fair pre-termination procedures -- procedures that would have given her a reasonable opportunity to present facts, and make arguments, showing that she was entitled to keep her job. The district court held the same, and its determinations are therefore Affirmed. ________ -13- 13 Appendix Appendix ________ "In the case of working disability according to the provisions of this chapter, the employer shall be under obligation to reserve the job filled by the laborer or employee at the time the accident occurred, and to reinstate him therein, subject to the following conditions: (1) that the laborer or employee demand reinstatement from his employer in his job within the period of fifteen (15) days counted from the date the laborer or employee is discharged from treatment, provided such demand is not made after the lapse of twelve months from the date of the accident; (2) that the laborer or employee be mentally and physically fit to fill said job at the time he demands reinstatement from his employer; and (3) that said job still exists at the time laborer or employee demands reinstatement. (The job shall be understood to exist when the same is vacant or is being filled by another laborer or employee....)" P.R. Laws Ann., tit. 11, 7 (Article 5-A of the Puerto Rico Workers' Accident Compensation Act). -14- 14