# United States Court of Appeals
## For the First Circuit

No. 17-1120

ALAN CLUKEY,

Plaintiff, Appellant,

v.

TOWN OF CAMDEN,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John H. Rich, III, <u>Magistrate Judge</u>]

Before

Howard, <u>Chief Judge</u>,
Thompson and Kayatta, <u>Circuit Judges</u>.

<u>David Glasser</u> for appellant.
<u>Frederick F. Costlow</u>, with whom <u>Heidi J. Hart</u> and <u>Richardson,
Whitman, Large & Badger</u> were on brief, for appellee.

June 25, 2018

**THOMPSON**, **Circuit Judge**.  In 2007, the Town of Camden, Maine moved its police department's dispatch operations to the Knox County Sheriff's Department in the Town of Rockland.  As a result, Camden laid off its three police dispatchers, including Plaintiff Alan Clukey who had been working as a Camden Police Department dispatcher for 31 years.  Clukey sued Camden in 2011 pursuant to 42 U.S.C. § 1983, claiming Camden deprived him of his procedural due process rights because it violated the recall provision in his collective bargaining agreement (CBA).  After a three-day trial in July 2016, a jury returned a verdict in favor of Camden.  Clukey is challenging the result on several fronts.  For the reasons that follow, we affirm.

## I. BACKGROUND

The crux of this case centers on a section in Clukey's CBA setting out his right to be recalled to employment after layoff.  The language of the recall provision is, in its entirety, as follows:

> In the event it becomes necessary for the Employer to layoff employees for any reason, employees shall be laid off in the inverse order of their seniority, by classification with bumping rights.  Bumping shall not be allowed between the police function and the dispatcher function.  All affected employees shall receive a two (2) calendar week advance notice of lay-off, and the Employer shall meet with the affected employee prior to the actual occurrence of layoff. Employees shall be recalled from lay-off according to their seniority provided they are qualified to fill the position.  Police function and dispatcher function shall be treated separately.

- 2 -

The affected employee has recall rights for twelve (12) months from the date of such lay-off. <u>The affected employee shall file in writing his or her mailing address and telephone number, if any, with the Town Manager at his/her office and shall be obligated, as a condition of his/her recall rights for said twelve (12) month period, to continue to inform the Town Manager in writing of any change thereafter.</u> If the Town recalls an employee, they shall notify said employee by certified letter and said employee shall notify the Town in writing within ten (10) days of receipt of said letter if he/she wished to return to work. Said employee will be required to report to work within ten (10) days of giving notice to the Town of his/her desire to work.

Art. 19, § 3 of Agreement between Town of Camden and Camden Police Benevolent Association, July 1, 2006 through June 30, 2008 (emphasis added). We'll refer to the underlined section as the "filing requirement" from now on. The main issue at trial was whether the CBA's recall provision included a condition precedent to triggering the right to be recalled, requiring Clukey to submit his contact details to Camden's town manager to indicate his interest in being recalled. Before we dive in to Clukey's arguments in this appeal, let's take a step back to review what's happened in this case so far.

## <u>Clukey I</u> & <u>II</u>: A review

This appeal is not the first time we have been dispatched to review a judgment resolving this case in Camden's favor. Camden initially responded to Clukey's complaint with a 12(b)(6) motion to dismiss, which the district court granted. We reversed, concluding (1) the plain language of the filing requirement

indicated the CBA parties' clear intent to provide laid-off employees "an entitlement to recall"--indeed, it does say "employees shall be recalled"; (2) the scope of the recall right (that is, to which positions within the police department the recall right applied) was ambiguous; (3) Clukey properly alleged a violation of his federal procedural due process rights regardless of whether a viable state breach-of-contract claim might exist as well; and (4) the precise process due to Clukey could be determined by the district court after the parties developed a factual record. Clukey v. Town of Camden, 717 F.3d 52, 58, 60, 61, 62 (1st Cir. 2013) (Clukey I) (emphasis added). Ultimately, ever mindful of the posture of the case before us at that time, we held (1) Clukey "ha[d] stated facts which, if true, establish that he ha[d] a constitutionally protected property interest in his right to be recalled to employment with the police department of the Town of Camden" and (2) Clukey had adequately alleged that Camden deprived him of this interest without the requisite process when it provided no notice at all about the positions for which it was hiring during the twelve-month period following his layoff. Id. at 59, 62.

Back in district court, Camden answered Clukey's complaint and the parties filed cross-motions for summary judgment. Camden asserted the filing requirement created a condition precedent, so Clukey's right to recall would have been triggered only if he had filed his contact information with the

town manager after he was laid off as an indication of his interest in being recalled. Clukey, on the other hand, claimed the sole purpose of the filing requirement was to ensure Camden had current contact details, not to create a condition precedent to his right to recall. The district court granted summary judgment in Camden's favor, finding the filing requirement unambiguously created the condition precedent argued by Camden. Clukey appealed, and we reversed once again. Clukey v. Town of Camden, 797 F.3d 97, 105 (1st Cir. 2015) (Clukey II).

The only issue before us in Clukey II was "whether the recall provision create[d] the condition precedent argued by [Camden]" in its motion. Id. at 101. After we closely examined the specific words, clauses, and structure of the CBA's recall provision, we found both parties' interpretations of the filing requirement plausible. Id. at 101-03. As a matter of law, therefore, we held the purpose and timing of the filing requirement were ambiguous. Id. at 103-04. We also held that the ultimate determination of whether the filing requirement created a condition precedent to the right to recall would be made by the fact finder as a matter of fact. Id. at 104. We noted there was no dispute that "Clukey did not submit [his contact] information post-layoff," so if it was found that "the CBA condition[ed] an employee's recall right on the written submission, after layoff, of the employee's mailing address and telephone number," then "this

case would necessarily come to an end." Id. at 101, 104. We "remand[ed] to the district court for further proceedings, including the consideration of any extrinsic evidence that might be useful and appropriate in determining the intent behind the filing requirement." Id. at 105.

**The jury trial**

On remand, the parties proceeded toward trial on Clukey's procedural due process claim.[1] Before the trial started, Clukey filed two motions in limine. The first sought to prevent Camden's witnesses from testifying about their current interpretations of the CBA; the trial judge denied this motion completely. The second sought to prevent testimony about Clukey's right to recall only applying to a dispatcher position; the trial judge denied this motion to the extent Clukey wanted to exclude testimony and argument about whether his recall rights extended specifically to two non-union, non-dispatcher positions filled in the twelve months following his layoff (one for an administrative assistant and the other for a parking enforcement officer). In his written decision, the trial judge commented that, under Clukey's argument, he would bear "a burden at least equal to that of the town to present evidence of the intent of the union

---

[1] Clukey initially also alleged a violation of his substantive due process rights and misrepresentation, and his wife alleged loss of consortium, but these claims were dismissed at an earlier stage of the litigation and were not tried to the jury.

negotiators with respect to this language at the time the CBA was adopted."

At trial, the jury heard from eight witnesses; four from each side. Clukey was the first witness to testify. He told the jury he had started working as a dispatcher in 1976, he joined the police union in 1993 for "job security" and because "everyone else in the department was joining," and he was still a member of the police union when Camden eliminated his position and laid him off in 2007. He was the primary financial provider in his family and the source of the healthcare insurance benefits for him and his wife. He testified that he was "devastated," "discouraged, depressed, anxious, [and] couldn't sleep at night" by the news that he was going to be laid off. His depression lasted "a long time," especially when he couldn't find seasonal work. Clukey also testified that, in the years following his layoff, he hadn't been able to find work as reliable and secure as the dispatcher position; instead he had worked on a seasonal basis with his brother, painting houses.

Clukey also talked about the two positions at the Camden Police Department that were filled after his layoff. He testified he didn't apply for the administrative assistant position because then-Police Chief Roberts had told him he wasn't qualified for the position and Clukey knew Chief Roberts would "probably be making the ultimate decision as to who got hired for the job." He did

not know about the parking officer position until after it was filled, but testified he would "[a]bsolutely" have taken it if it had been offered to him. Clukey also admitted, however, to declaring he wouldn't work for Camden ever again, even if the job paid $100 per hour. This statement was part of a letter he wrote to the editor of a local Camden newspaper in July 2007 to thank the townsfolk who, during a Camden town meeting, had opposed moving the dispatch function out of town and to express his disappointment that Camden's dispatcher positions had been eliminated.

Randy Gagne, a longtime member of the Camden Police Department, was not available to testify at the trial in person, but his deposition transcript was read into the record before the jury during Clukey's case-in-chief. Gagne was a police lieutenant from 2002 through 2010, then became Chief in 2011 and still held this position at the time of his deposition. He testified he was not a part of the layoff decision process in 2007 because he is related to Clukey by marriage. He also testified the only layoff that occurred in the Camden Police Department during his tenure was of the dispatchers in 2007.[2] None of Clukey's witnesses addressed the meaning of the filing requirement.

---

[2] Clukey also presented an expert witness who testified about Clukey's lost wages. The jury did not reach the question about damages so we omit a summary of this testimony. In addition, Camden's town manager at the time of the trial testified briefly as a rebuttal witness for Clukey about job advertising for Camden in general, and specifically about the content of the advertisement

Three of Camden's witnesses testified about their interpretations of the CBA's filing requirement. Sharon Gilbert, a member of Camden's board of selectmen at the time Camden approved and signed the CBA in question, was one of the individuals who reviewed and signed the contract. John French joined Camden's board of selectmen in 1996 and was still on the board at the time of his trial testimony. As a selectman, he reviewed the CBA before the board approved it and was part of the contract's negotiations. Roberta Smith, Camden's town manager from 2002 to 2011, was involved in the administration of the 2007 CBA, meaning she "reviewed the [CBA] each time it came up for renewal or at any time day to day when any issue arose that [she] had to refer to the contract."

All three witnesses testified the CBA gave Clukey the right to be recalled to the position from which he was laid off, i.e., a union dispatcher position, if this position became available. Former town manager Smith testified Clukey's recall right did not extend to the nonunion parking enforcement officer and administrative assistant positions because these positions were covered by internal personnel policies. All three interpreted the filing requirement as requiring Clukey to file his name and address with Camden to indicate his interest in being recalled if

_____

for the parking enforcement officer and administrative assistant positions and the salaries advertised for each.

a dispatcher position became available. Smith also testified that Clukey and the two other dispatchers laid off at the same time as Clukey were not specifically told they needed to file their contact information with Camden in order to indicate their interest in being recalled and secure their right to recall. But one of the other dispatchers did in fact file his name and address with Camden so he could be considered for recall, leading Smith to "presume . . . they understood the terms of the contract."[3]

At the end of the trial, the jury chose "yes" on the first question on the special verdict form, which asked whether it was more likely than not that the filing requirement "required the plaintiff to file his mailing address and telephone number with the town manager before he was entitled to be notified of a possible recall, even if the town already had that information in its files." As a result, the jury did not reach the other questions on the verdict form and the district court entered judgment for Camden.[4] Clukey filed a multi-faceted post-trial motion, renewing his request for judgment as a matter of law under Federal Rule of

---

[3] Camden also presented testimony from a medical and vocational case manager who provided expert testimony on labor market surveys in 2007. Like Clukey's expert, his testimony was relevant only to damages, which were not calculated by the jury.

[4] Question two asked whether the right to recall extended to the parking attendant and administrative assistant positions, question three asked whether Clukey would have taken one of those positions if offered, and question four asked for a damages calculation.

Civil Procedure 50[5], requesting a new trial under Rule 59, and requesting relief from the judgment under Rule 60(b)(6). The district court denied the motion in its entirety. Undeterred, Clukey filed another appeal and we find ourselves recalled once more to the weeds of Clukey's grievance against Camden.

## II. DISCUSSION

Clukey's brief is by no means a model of organizational clarity, but we have distilled his many arguments into three broad categories. First, Clukey argues that the trial judge erred by instructing the jury that each party had the burden of proving its respective interpretation of the filing requirement because Camden should have borne the sole burden to prove the filing requirement contained a condition precedent. Next, Clukey argues Camden's witnesses' interpretations of the filing requirement were inadmissible extrinsic evidence because these testimonies were self-serving and reflected their interpretations of the CBA language at the time of trial and not Camden's interpretation of the language when the CBA was finalized and executed in 2007. Third, Clukey argues the trial judge erred by admitting evidence about whether the scope of the recall right extended specifically

---

[5] Both parties moved for judgment as a matter of law at the close of evidence; the trial judge summarily denied both motions.

to the nonunion parking enforcement officer and administrative assistant positions which became available after Clukey's layoff.[6]

## Burden of proof

The trial judge instructed the jury that "[e]ach party [bore] the burden of proof with respect to his or her interpretation" of the filing requirement. Clukey challenges this instruction as incorrect as a matter of law.

At the charge conference held in the morning of the third and last day of trial, the parties discussed the proposed burden of proof instruction, but neither lodged an objection to the allocation of a concurrent burden of proof for the interpretation of the filing requirement.[7] Instead, the parties discussed the

---

[6] Clukey also lists the denial of his post-trial motion as an issue on appeal, but we deem this issue waived for failure to provide any argument about why the denial of the motion was in error. See Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 139-40 (1st Cir. 2017) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (alteration in original) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

[7] As we mentioned earlier, the trial judge actually first articulated this concurrent burden of proof in his written decision addressing Clukey's motion in limine to exclude Camden's witnesses' testimony about their interpretations. At that time, he wrote:

> [Clukey] ignores the fact that, under his definition of extrinsic evidence on this issue [reflecting the intent of the parties to the CBA at the time it was negotiated, from the individuals involved in the negotiations], he bears a burden at least equal to that of the town to present evidence of the intent of the union negotiators with respect to this language at the time the CBA was adopted. He does not indicate that he has any such

- 12 -

instruction only when Camden asked the trial judge what would happen if the jury determined neither party had met its burden of proving its interpretation; i.e., if they got hung up on that point.  Clukey engaged in the theoretical discussion that followed about whether the trial would end with a mistrial if the jury did not find for one interpretation over the other--a discussion captured over several transcript pages--but he did not raise any objection to the proposed instruction.

Back in the courtroom, when the trial judge instructed the jurors, he told them Clukey bore the burden of proving his case by a preponderance of the evidence, explained what this meant, and then said:

> [A]s to the contract at issue in this case, the parties each contend that certain portions of Article 19 of the [CBA]--that's Joint Exhibit 1 that will be with you in the jury room--between the Town and the Camden Police Benevolent Association that was in effect in 2007 should be interpreted in a different way.  Each party bears the

---

testimony to present. He cites no authority for the proposition that, should the town fail to present the necessary extrinsic evidence to support its interpretation, he need not present any extrinsic evidence in order for his interpretation to prevail. In the absence of evidence that the town was the sole drafter of the CBA (making it something other than a collectively bargained agreement), the proponent of a particular interpretation of an ambiguous term of that contract bears the burden of proof with respect to that interpretation.  (Emphasis added).

So it cannot be said Clukey did not have a heads up on the district court's thinking by the time of the charge conference.

> burden of proof with respect to his or her interpretation of those terms. (Emphasis added).

At the end of all of the instructions, the trial judge held a conference at sidebar so the parties could note their objections to the instructions for the record. Clukey lodged three objections; none, however, challenged the allocation of the burden of proof.

Before us, Clukey asserts that the trial judge misallocated the burden of proof because alleging the existence of a condition precedent is an affirmative defense and Camden should have therefore borne the sole burden to prove its contention that the filing requirement created a condition precedent. We review his argument for plain error because he did not object to the instruction at trial as required by Fed. R. Civ. P. 51. "[P]lain error is one hard test to meet, particularly in civil litigation." Rodríguez-Miranda v. Benin, 829 F.3d 29, 42 (1st Cir. 2016) (quoting Bielunas v. F/V Misty Dawn, Inc., 621 F.3d 72, 78 (1st Cir. 2010)). To establish the trial judge committed plain error by instructing the jurors that the parties bore a concurrent burden of proof on their respective interpretation of the filing requirement, Clukey has to show that (1) a legal error in the instruction (2) was an obvious error which (3) affected Clukey's substantial rights and (4) "threaten[ed] the fairness, integrity or public reputation of the proceedings." United States v. Rivera-

- 14 -

Ruperto, 852 F.3d 1, 10 (1st Cir. 2017) (citing United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014)).  "'[P]lain error' is 'an indisputable error by the judge, given controlling precedent.'"  United States v. Ponzo, 853 F.3d 558, 582 (1st Cir. 2017) (quoting United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016)).  Whether or not Clukey could demonstrate any error in the trial judge's burden allocation instruction, he is nonetheless unable to show that any error was clear or obvious.  In fact, Clukey has provided zilch legal support to bolster his argument and in our probe of Maine law on this issue, we have found none.

That being said, one of the most basic principles of civil litigation is that "the burden of proof rests upon the party who asserts the affirmative of an issue."  Federal Trial Handbook Civil § 23:4 (4th ed.) (citing 29 Am. Jur. 2d Evidence § 156). And it is important to remember that the trial was Clukey's opportunity to prove his one and only claim: Camden had violated his due process rights when it failed to provide him with notice and a hearing before deciding not to recall him to either the parking enforcement officer or administrative assistant positions that became available in the year immediately following his layoff. "To establish a due process violation, [a litigant] must 'show first, a deprivation of a protected property interest, and second, a denial of due process.'"  Núñez Colón v. Toledo-Dávila, 648 F.3d

- 15 -

15, 22–23 (1st Cir. 2011) (quoting Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008)).

Clukey bore the ultimate burden at trial to prove his § 1983 claim against Camden. Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001). Indeed, the basic legal principles governing a § 1983 claim place the sole burden on the plaintiff:

> In a suit brought under the provision of the Civil Rights Act, authorizing a civil action for the deprivation of rights, the plaintiff has the burden of proof and must establish all elements which are essential to maintain the cause of action. The plaintiff must prove the alleged deprivation of rights, that the deprivation has resulted from the breach of a duty owed by the defendant, that the deprivation is of a right secured by the Constitution and laws of the United States, and that the defendant was acting under color of state law.

14A C.J.S. Civil Rights § 501 (2018). As we said in Clukey I, "[u]nder Maine law, a constitutionally protected property interest can be created in a public employment contract." Clukey I, 717 F.3d at 57–58 (citing Krennerich v. Inhabitants of Town of Bristol, 943 F. Supp. 1345, 1352 (D. Me. 1996)).[8] But before the jury could get to whether Camden had deprived Clukey of a protected property interest, our holding in Clukey II meant Clukey first had to prove he had triggered the right to recall.

Whether the filing requirement language was intended to be a condition precedent or not to his recall right was a central

_____

[8] The parties agree that Maine law applies to the substantive issues presented in this case. Clukey II, 797 F.3d at 101.

- 16 -

--indeed, as we just said, threshold--issue at trial. We were clear in Clukey II that each party had presented a plausible interpretation of the filing requirement, rendering this contract provision ambiguous as a matter of law. 797 F.3d at 103-04. A trier of fact was therefore responsible for deciding which interpretation was correct as a matter of fact when the parties proceeded to trial on Clukey's entire § 1983 claim. Id. at 104.

Nowhere in Clukey II did we characterize or frame the issue as an affirmative defense to Clukey's cause of action. As a result, the burden of proving that the filing requirement was not a condition precedent (and therefore that the right to recall was triggered) likely rested with Clukey based on general principles of burden allocation. To that end, Clukey could have presented extrinsic evidence to support his position. Id. ("[T]he factfinder may consider extrinsic evidence 'casting light upon the intention of the parties with respect to the meaning of the unclear language.'") (quoting Hilltop Cmty. Sports Ctr., Inc. v. Hoffman, 755 A.2d 1058, 1063 (Me. 2000)). But he did not.[9] Instead, Clukey, as was his druthers, relied entirely on the language of the CBA when he argued during his closing that the jury need look no

---

[9] We understand that the lack of extrinsic evidence presented by Clukey was not for lack of effort in locating such evidence. But even if Clukey could not find relevant extrinsic evidence to present to the jury to prove his interpretation, it was still his burden to meet.

further than this language to determine that the filing requirement did not require him to provide his contact details to the town manager to trigger his entitlement to recall.[10]  To the extent the district court may have erred in instructing the jury that both parties bore the burden of proving their interpretations of the filing requirement, if anything that instruction redounded to Clukey's benefit.  But given that Clukey has not demonstrated the error was either clear or obvious, we see no plain error here.

**Admissibility of testimony interpreting the filing requirement**

In his brief, Clukey leans heavily on his arguments against Camden's witnesses' interpretations of the filing requirement as inadmissible extrinsic evidence of the town's intent to create a condition precedent.  He also asserts that without their testimony, Camden could not have met its burden of proving the filing requirement contained a condition precedent. We review denials of motions in limine and objections to rulings on the admissibility of evidence for abuse of discretion. United States v. Brown, 669 F.3d 10, 21 (1st Cir. 2012) (evidentiary

---

[10] Indeed, he argued repeatedly in his closing that the jury need look no further than the plain language of the provision to discern the meaning of the filing requirement.  For example:

What evidence is there for [Clukey's] interpretation of the contract?  The contract.  It's English. . . .  Read it.  If you read the plain English, you'll see that what the Town is doing is being hyper-analytical, hyper-constructive of plain words and stacking inferences on inferences on inferences to try and create a situation that is tenable to their position.

rulings); <u>Hatch</u> v. <u>Trail King Indus., Inc.</u>, 656 F.3d 59, 64 (1st Cir. 2011) (motions in limine). "Under the 'abuse of discretion' standard, this court will not substitute its judgment for that of the district court unless left with a 'definite and firm conviction that the court below committed a clear error of judgment.'" <u>Paolino</u> v. <u>JF Realty, LLC</u>, 830 F.3d 8, 13 (1st Cir. 2016) (quoting <u>Schubert</u> v. <u>Nissan Motor Corp. in U.S.A.</u>, 148 F.3d 25, 30 (1st Cir. 1998)), <u>cert. denied</u>, 137 S. Ct. 2093 (2017). "Even if an abuse of discretion occurs, a new trial is not required unless the error in admitting evidence 'had a substantial and injurious effect or influence upon the jury's verdict.'" <u>Ira Green, Inc.</u> v. <u>Military Sales & Serv. Co.</u>, 775 F.3d 12, 18 (1st Cir. 2014) (quoting <u>Gomez</u> v. <u>Rivera Rodríguez</u>, 344 F.3d 103, 118 (1st Cir. 2003) and citing Fed. R. Civ. P. 61).[11]

Even if we assume arguendo that the trial judge abused his discretion when he allowed Camden's witnesses' interpretations

---

[11] A quick aside about the standard of review. While Camden does not question whether Clukey's appeal from the denial of his motion in limine on this issue was properly preserved, Clukey is clearly concerned about it. He claims that he renewed his motion in limine at the start of trial, but the transcript does not back this up. Clukey filed a "Motion to Correct Record on Appeal," asking the trial judge to modify the record if he remembered Clukey's renewal of his motion in limine. The trial judge denied the motion. None of this matters though, because prior to trial, the judge made a definite ruling denying Clukey's motion in limine. Clukey was therefore not required to renew his motion or his objections to the testimony at the outset of trial. <u>See</u> <u>United States</u> v. <u>Brown</u>, 669 F.3d 10, 22 n.18 (1st Cir. 2012); <u>Rodríguez</u> v. <u>Señor Frog's de la Isla, Inc.</u>, 642 F.3d 28, 35 (1st Cir. 2011);

of the purpose of the filing requirement (though we doubt Clukey's arguments against the admissibility of these testimonies are winning ones), he cannot prevail because he doesn't argue the jury's deliberations were tainted by hearing the supposed inadmissible testimony. See Tersigni v. Wyeth, 817 F.3d 364, 369 (1st Cir. 2016) ("We may affirm in spite of an erroneous evidentiary ruling if the error was harmless, meaning that 'it is highly probable that the error did not affect the outcome of the case.'") (quoting McDonough v. City of Quincy, 452 F.3d 8, 19–20 (1st Cir. 2006)). As a result, Clukey has waived on appeal any argument that he was prejudiced. Such a waiver is fatal on harmless error review.[12]

### III. CONCLUSION

As we indicated in Clukey II and again reiterated here, Clukey's case "necessarily c[a]me to an end" when the jury

Fed. R. Evid. 103(b) ("Once the court rules definitively on the record--either before or at trial--a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Even so, he repeatedly objected during Camden's witnesses' testimonies when they testified to their interpretations of the filing requirement. All of this is to say that we agree with Clukey that his objections on this issue are preserved and we review for abuse of discretion.

[12] To quickly address Clukey's last argument--that the district court erred by admitting evidence about whether the scope of the recall right was limited to union positions or whether it extended specifically to the parking enforcement officer and administrative assistant positions that became available in the year after Clukey's layoff--we note that the jury did not reach the question on the verdict form about whether Clukey's right extended to these positions because it stopped its deliberations,

determined that "the CBA condition[ed] an employee's recall right on the written submission, <u>after</u> layoff, of the employee's mailing address and telephone number," 797 F.3d at 101, and there was no dispute that Clukey had not contacted the town manager with his contact details after his layoff, <u>id.</u> at 99. "[I]f he failed to meet such a condition precedent, he would never have acquired a right to recall." <u>Id.</u> at 101 ("An elementary rule of contract law is that the nonoccurrence of a condition discharges the parties from their duties under the contract.") (quoting <u>Irving</u> v. <u>Town of Clinton</u>, 711 A.2d 141, 142 (Me. 1998)). Without a right to recall, there was no deprivation of a protected property interest and no violation of his due process rights.

The judgment in favor of Camden is, therefore, **<u>affirmed.</u>** Each party will bear its own costs.

---

as instructed on the special verdict form, after determining that the purpose of the filing requirement was to notify Camden of one's interest in being recalled. If there was any error in admitting the testimony about the scope of the recall right, it is harmless. <u>See</u> <u>Tersigni</u> v. <u>Wyeth</u>, 817 F.3d 364, 370 (1st Cir. 2016).